IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRIDGET GOODEN-HAMILTON,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTELLI LAW, LLC, DITECH FINANCIAL, LLC, and ALL OTHERS<br><br>Defendants. | ) | CIVIL ACTION FILE<br><br>NO. 1:17-CV-01550-TCB-JSA |

**DEFENDANT DITECH FINANCIAL, LLC'S**
**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant Ditech Financial, LLC ("Ditech"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this Memorandum in Support of its Motion to Dismiss Plaintiff Bridget Gooden-Hamilton's ("Plaintiff") "Amended Complaint for Injunctive, Civil Penalties, and Other Relief" (the "Amended Complaint") [ECF 8], respectfully showing the Court as follows:

## <u>INTRODUCTION</u>

This suit is a meritless attempt by Plaintiff to delay a lawful foreclosure on real property. There is no dispute that Plaintiff defaulted on her monthly payments for the loan secured by the property. However, to the extent that it is discernible,

Plaintiff purports to allege violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Georgia Residential Mortgage Act ("GRMA"), and the Fair Credit Reporting Act ("FCRA"). Plaintiff's Amended Complaint appears to be based entirely on the mistaken belief that the satisfaction and cancellation of a secondary loan on the property (that does not involve either of the defendants) somehow extinguished her first mortgage serviced by Ditech. As discussed in detail below, Plaintiff has failed to state a claim for which relief can be granted on each count alleged against Ditech. Therefore, her claims should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I. Loan Origination and Chain of Title

On or around January 3, 1996, Plaintiff and Melvin Gooden, Plaintiff's deceased spouse (Amended Complaint, ¶ 8) (collectively, the "Borrowers"),

---

[1] Ditech denies all the assertions in the Complaint, although their material allegations are taken as true for purposes of this motion. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Nonetheless, the Court may consider the documents attached to the instant Motion because they are referenced in the Complaint and are central to Plaintiff's claims: "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Odion v. Google Inc.*, 628 F. App'x 635, 638 (11th Cir. 2015) (citing Fed. R. Evid. 201(b)). In addition, "a district court may take judicial notice of public records at the dismissal stage." *Id.*

obtained a mortgage loan in the amount of $ 97,410.00 (the "Loan") in favor of the Bank of Texas FSB ("BoT") in order to finance their purchase of the real property located at 4585 Spring Valley Parkway, College Park, Georgia 30349 (the "Property"). To secure the Loan, Borrowers executed a Security Deed in favor of BoT and its successors and assigns (the "Security Deed"), wherein the Borrowers granted BoT and its successors and assigns a first-priority security interest in the Property. The Security Deed was recorded in Deed Book 20478, Page 321 of the Fulton County, Georgia real estate records.[2] The Security Deed contains a power of sale clause that conveys to BoT, its successors, and assigns the right to foreclose and sell the Property in the event of Borrowers' default. (*See* Security Deed, Ex. A, ¶ 21).

The Security Deed was assigned to Chemical Residential Mortgage Corporation on or around January 25, 1996 (the "First Assignment"). The First Assignment was recorded in Deed Book 21465, Page 83 of the Fulton County, Georgia real estate records.[3] (*See* First Assignment, Ex. B hereto). On or about

---

[2] A true and correct copy of the Security Deed is attached hereto and incorporated herein by reference as **Exhibit A**.

[3] A true and correct copy of the First Assignment is attached hereto and incorporated herein by reference as **Exhibit B**.

April 14, 2004, the Security Deed was assigned (the "Second Assignment") to the Secretary of Veterans Affairs f/k/a Administrator of Veterans Affairs (the "VA"). The Second Assignment was recorded in Deed Book 37631, Page 224 of the Fulton County, Georgia real estate records.[4] (*See* Second Assignment, Ex. C hereto).

On July 1, 2004, Plaintiff entered into a loan modification agreement with the VA (the "Modification Agreement").[5] (*See* Modification Agreement, Ex. D hereto). In the Modification Agreement, Plaintiff agreed that the Modification Agreement "shall in no way whatsoever be construed or interpreted to release the security given for the [Security Deed]" and that the Security Deed "shall continue in full force and effect." (Ex. D, p. 2). Ditech became the servicer of the Loan on June 1, 2016 and is the current Loan servicer.[6] (*See* Ex. E hereto).

On or about January 25, 2005, Plaintiff obtained a second loan in the amount of $67,320.00 from Fulton County Government ("Fulton County"), which created a

---

[4] A true and correct copy of the Second Assignment is attached hereto and incorporated herein by reference as **Exhibit C**.

[5] A true and correct copy of the Modification Agreement is attached hereto and incorporated herein by reference as **Exhibit D**. The first page of the Modification Agreement is also attached to the Plaintiff's Complaint as Exhibit 1.

[6] True and correct copies of the servicing transfer letters mailed to Plaintiff and to the Property are attached hereto and incorporated herein by reference as **Exhibit E**.

second-priority and subordinate lien on the Property (the "Junior Loan"). In connection with the Junior Loan, Plaintiff executed a Security Deed (the "Junior Security Deed") in favor of Fulton County. The Junior Security Deed was recorded in Deed Book 42174, Page 154 of the Fulton County, Georgia real estate records.[7] (*See* Junior Security Deed, Ex. F hereto). As a condition of the Junior Loan, the Junior Security Deed required that Plaintiff "shall perform all of [her] obligations under any security deed, mortgage, deed of trust, or other security instrument which conveys an interest in or creates a lien on the Property which has priority over that conveyed by this Deed." (*See* Junior Security Deed, Ex. F hereto). On or around July 12, 2010, the Junior Loan was "satisfied in full" and a cancellation of the Junior Security Deed was recorded on July 15, 2010 in Deed Book 49189, Page 279 of the Fulton County, Georgia real estate records (the "Junior Security Deed Cancellation").[8]

Although the Junior Loan was satisfied and the Junior Security Deed was accordingly cancelled of record, the first-priority Loan serviced by Ditech and the

---

[7] A true and correct copy of the Junior Security Deed is attached hereto and incorporated herein by reference as **Exhibit F**.

[8] A true and correct copy of the Junior Security Deed Cancellation is attached hereto and incorporated herein by reference as **Exhibit G**.

corresponding Security Deed have not been satisfied and remain active. (*See* Exhibit A). On November 1, 2013, Plaintiff purported to convey title to the Property to Payne's Diversified Housing, Inc. through a Quitclaim Deed recorded in Deed Book 43404, Page 40 of the Fulton County, Georgia real estate records (the "Quitclaim Deed").[9] (Ex. H hereto). Plaintiff does not allege that the Loan was paid off in connection with the Quitclaim Deed or that the VA's security interest in the Property was relinquished. (*See* Amended Complaint, *passim*).

## B. Loan Default, Debt Validation Letters, and Foreclosure Notices

Plaintiff admits that she has not made a payment on the Loan account since 2010. (*See* Amended Complaint, ¶ 16). As a result of Plaintiff's continuing default on her payment obligations under the Loan, Residential Credit Solutions, Inc. ("RCS"), the prior servicer of the Loan, mailed a "Notice of Default and Intent to Accelerate" to Plaintiff on October 14, 2013 (the "Notice of Default").[10] (*See* Ex. I hereto.) The Notice of Default notified Plaintiff that she was "in default under the

---

[9] A true and correct copy of the Quitclaim Deed is attached hereto and incorporated herein by reference as **Exhibit H**. The first page of the Borrowers' original Security Deed appears on the immediately succeeding page after the Quitclaim Deed, apparently attached as an Exhibit. (*See* Ex. H).

[10] A true and correct copy of the Notice of Default is attached hereto and incorporated herein by reference as **Exhibit I**.

terms of the documents creating and securing [her] Loan" and if she failed to cure the default, the Loan would be accelerated and the Property foreclosed. (*Id.*, p. 1). Plaintiff failed to cure the default on the Loan and the Property was referred to the law firm of Defendant Albertelli Law ("Albertelli") for a non-judicial foreclosure scheduled for November 1, 2016. On September 29, 2016, Albertelli sent Plaintiff a "Notice of Foreclosure Sale" (the "Notice of Sale"), pursuant to O.C.G.A. § 44-14-162 *et seq.*[11] In the Notice of Sale, Albertelli informed Plaintiff that "[a]s a result of your default under the terms of the Security Deed, you are hereby notified the entire amount of the outstanding principal balance, interest, and other authorized charges of the loan, has been declared, and is now, immediately due and payable in full." (Notice of Sale, Ex. J, p. 1). The Notice of Sale also attached a copy of the Notice of Sale Under Power pursuant to O.C.G.A. § 44-14-162 and informed Plaintiff that the Security Deed was held by "Secretary of Veterans Affairs of Washington, DC." (*See* Notice of Sale, Ex. J hereto).

Prior to the delivery of the Notice of Sale from Albertelli, Plaintiff "request[ed] validation of the alleged debt" in a fax sent to Ditech on October 13,

---

[11] A true and correct copy of the Notice of Sale is attached hereto and incorporated herein by reference as **Exhibit J**. The first page of the Notice of Sale is also attached to the Plaintiff's Amended Complaint as Exhibit 3.

2016 (the "Notice of Validation of Alleged Debt").[12] In response, Ditech sent a letter to Plaintiff dated October 16, 2016, in which Ditech informed Plaintiff that it had received the Plaintiff's Notice of Validation of Alleged Debt, and that it was "looking into the matter and will get back to you as soon as we have all the information."[13] (Ex. L hereto). In a letter dated November 10, 2016, Ditech notified Plaintiff that "Ditech is in the process of reviewing your written request," that "[o]ur research has not concluded," and that "[t]he purpose of this letter is to notify you of our ongoing investigation in an effort to provide you with a resolution."[14] (Ex. M hereto). In a letter dated December 15, 2016, Ditech again responded to Plaintiff's letter and answered her inquiry (the "Response Letter").[15] (Ex. N hereto). In the Response Letter, Ditech informed Plaintiff that the Loan was owned by the "Department of Veteran's Affairs." (*See* Response Letter, Ex. N). Ditech also

[12] A true and correct copy of the Notice of Validation of Alleged Debt is attached hereto and incorporated herein by reference as **Exhibit K**.

[13] A true and correct copy of Ditech's October 16, 2016 letter to Plaintiff is attached hereto and incorporated herein by reference as **Exhibit L**.

[14] A true and correct copy of Ditech's November 10, 2016 letter to Plaintiff is attached hereto and incorporated herein by reference as **Exhibit M**.

[15] A true and correct copy of Ditech's Response Letter to Plaintiff is attached hereto and incorporated herein by reference as **Exhibit N**. The first page of the letter is also attached to the Amended Complaint as Exhibit 4.

enclosed Plaintiff's payment history for the Loan, the promissory note, Security Deed and the notice of service transfer to Ditech. *Id.*[16]

On May 1, 2017, Plaintiff filed her application to proceed forma pauperis in this Court and filed her "Complaint for Civil Penalties, Injunctive, and Other Relief" (the "Original Complaint") on May 4, 2017. [ECF 1, 5]. The Court conducted a frivolity analysis and entered an Order on May 11, 2017 requiring Plaintiff to file an amended complaint. [ECF 7]. Plaintiff filed her Amended Complaint pursuant to the Court's May 11, 2017 Order on May 31, 2017. [ECF 8]. Ditech was served on November 2, 2017 and now moves to dismiss the Amended Complaint with prejudice.[17]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

[16] Plaintiff attaches other correspondence to her Amended Complaint. However, this correspondence is between Plaintiff and other entities, not between Plaintiff and Ditech.

[17] This matter is related to the matter of *Angeline Payne v. Albertelli Law, LLC and Ditech Financial, LLC*, in which this Court granted Ditech's Motion to Dismiss for failure to state a claim on June 12, 2017. *See Payne v. Albertelli Law and Ditech*, Civil Action No. 1:16-CV-04492-SCJ-AJB (N.D. Ga. June 12, 2017) (the "Prior Lawsuit"). The scheduled foreclosure of the Property was postponed due to the filing of the Prior Lawsuit.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79.

While "[t]he allegations contained in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers,. . . [a] pro se complaint, however, is still required to conform to procedural rules." *Goguette v. U.S. Bank N.A.*, No. 1:15-cv-3826-TWT-CMS, 2016 U.S. Dist. LEXIS 139850, at *5 (N.D. Ga. Sept. 1, 2016) (citations omitted). "[T]he leniency afforded to pro se complaints does not give courts license to serve as de facto counsel or permit them to rewrite an otherwise deficient pleading." *Id.* "[E]ven a pro se litigant must allege the essential elements of the claims for relief, and vague and conclusory allegations are insufficient to state a claim." *Tigner v. IRS*, No. 1:99-CV-789-TWT, 2000 U.S. Dist. LEXIS 5062, at *2 (N.D. Ga. Mar. 23, 2000).

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff asserts several claims against Ditech arising from her delinquency on the Loan and the subsequent initiation of foreclosure proceedings. For the reasons stated below, all of Plaintiff's claims are ripe for dismissal.

### I. Plaintiff Fails to Plead her Claims with Sufficient Particularly.

Plaintiff's Amended Complaint is a recitation of statutes with infinitesimal factual information and, thus, utterly fails to meet the pleading standard required by this Court. "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "a complaint need not contain 'detailed factual allegations,' [it] must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bohannon v. PHH Mortg. Corp.*, No. 1:12-CV-02477-RWS-GGB, 2012 U.S. Dist. LEXIS 191885, at *15 (N.D. Ga. Nov. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678–79.

Here, Plaintiff's Amended Complaint repeatedly recites statutory sections of

her alleged causes of action. (*See e.g.*, Amended Complaint, ¶¶ 13, 16, 17–30). These recitations of law are supported by little, if any, factual allegations, and the factual allegations that are contained in the Amended Complaint are merely conclusory statements of harm. (*See e.g.*, Amended Complaint, *passim*). Even generously construing the documents appended to the Amended Complaint as factual support, Plaintiff fails to sufficiently state a claim against Ditech because most of the documents appear to be sent to or from the prior servicer of the Loan, RCS. (*See, e.g.*, *id.* at ¶¶ 15, 17, 25–32).

Since Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and Plaintiff has only stated "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice," *Iqbal*, 556 U.S. at 678–79, Plaintiff's Amended Complaint is ripe for dismissal.

## II. All of Plaintiff's Purported Claims Fail for Failure to State a Claim.

Even if Plaintiff had sufficiently alleged facts to support her the causes of action in the Amended Complaint, her individual counts fail as a matter of law and must be dismissed for the reasons set forth below.

### A. Plaintiff has failed to state a claim under the FDCPA.

To support the alleged violation of the Fair Debt Collection Practices Act

("FDCPA"), Plaintiff claims that "defendant(s) sent erred information regarding account" after a request for information on the loan. (Amended Complaint, ¶ 11). However, Plaintiff's allegations fail to state a claim on two fronts.

**1. Plaintiff has failed to allege that Ditech is a "debt collector" pursuant to the FDCPA.**

"[T]o prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *McCloud v. HSBC Bank USA, NA*, No. 1:12-DV-3301-CAP-ECS, 2014 U.S. Dist. LEXIS 186667, at *35 (N.D. Ga. Aug. 14, 2014)) (quoting *Latimore v. Gateway Retrieval*, LLC, No. 1:12-cv-286, 2013 U.S. Dist. LEXIS 29512, 2013 WL 791258, at *5 (N.D. Ga. Feb. 1, 2013)).

At the outset, it should be noted that Plaintiff fails to allege any facts indicating that Ditech qualifies as a "debt collector" under the FDCPA based on the Loan's status. Plaintiff merely provides the definition of a debt collector under the FDCPA. (Amended Complaint, ¶ 10). The failure to allege that a defendant is a "debt collector" is a sufficient ground to dismiss FDCPA claims. *See Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ-COOKE/BANDSTRA, 2010 U.S. Dist. LEXIS 126140, at *5 (S.D. Fla. Nov. 30, 2010) (dismissing FDCPA claim with

prejudice and explaining that, "[s]ince [the defendant] was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a 'debt collector' under section 1692"); *Reese v. JPMorgan Chase*, 686 F. Supp. 2d 1291, 1307–08 (S.D. Fla. 2009) (dismissing claims against creditor and mortgage servicer because they were not debt collectors under the FDCPA). Since Plaintiff fails to allege Ditech is a debt collector, and Ditech is "the mortgage company servicing the Plaintiff's mortgage, [and] it cannot be liable as a 'debt collector' under section 1692," *Locke*, 2010 U.S. Dist. LEXIS 126140, at *5, Plaintiff's FDCPA claim should be dismissed.

**2. Even if Ditech were a debt collector, Plaintiff has failed to allege that Ditech violated the FDCPA.**

Plaintiff fails to allege a specific provision of the FDCPA that was allegedly violated. (*See* Amended Complaint, ¶¶ 10–11). "A complaint will be deemed deficient under this provision, however, if it 'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.'" *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (quoting *Foti v. NCO Financial Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)).

To the extent Plaintiff's quotation of Section 1692f(6) implies an alleged violation, Amended Complaint, ¶ 10, the undisputed facts belie her claim. "Under Title 15, Section 1692f(6), a debt collector may not take or threaten to take nonjudicial action to effect dispossession or disablement of property if there is no

present right to possession of the property claimed as collateral through an enforceable security interest." *Hardy v. Wells Fargo Bank N.A.*, No. :12-CV-851-SCJ-LTW, 2013 U.S. Dist. LEXIS 191455, at *35 (N.D. Ga. Jan. 31, 2013) (citing 15 U.S.C. § 1692f(6)). However, Ditech, as the servicer of Plaintiff's creditor, represents a present right to possession of the Property due to Plaintiff's admitted failure to pay the Loan. (Amended Complaint, ¶ 16).

Construing Plaintiff's Amended Complaint liberally, Plaintiff appears to believe that the VA is not the secured creditor for the Loan, and therefore, contends that the December 16, 2016 Response Letter from Ditech contained "erred information regarding the account, without the true name, address and telephone number of the secured holder of the alleged account." (Amended Complaint, ¶ 11). However, the recorded real property records for the Property and Loan directly contradict the Plaintiff's claim and confirm that the VA is in fact the secured creditor. (*See* Security Deed, First Assignment, Second Assignment, Exs. A, B, C). Furthermore, Plaintiff's contention that the VA is not the secured creditor fails because Plaintiff specifically entered into a Modification Agreement with the VA. (*See* Modification Agreement, Ex. D hereto). In the Modification Agreement, Plaintiff and the VA agreed that the Security Deed and Note were "transferred and assigned from Chase Manhattan Mortgage Corporation to the Secretary of Veterans

Affairs by virtue of an Assignment dated May 24, 2004" and that "the Secretary of Veterans Affairs is now the present holder of said Security Deed and Note." *Id.* Likewise, the Notice of Sale accurately informed Plaintiff that the Note and Security were held by the "Secretary of Veterans Affairs." (*See* Notice of Sale, Ex. J).

Contrary to Plaintiff's contention, this Loan has not been satisfied and accordingly, the Security Deed has not been cancelled. (Amended Complaint, ¶ 8). Rather, the Junior Security Deed on the Property was satisfied in 2010 and Plaintiff's Amended Complaint appears to be based on her confused belief that the Cancellation of the Junior Loan somehow satisfied her first-priority security interest held by the VA. (*See* Exs. E, F). Plaintiff states that she has "not made a payment on this account since . . . 2010." (Amended Complaint, ¶ 16). Plaintiff's Security Deed provides that upon notice and Plaintiff's failure to remedy default, the lender "may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law." (Ex. A ¶ 21). As such, Plaintiff's claim that "[o]n or about December 16, 2016 defendant(s) sent erred information regarding account" (Amended Complaint, ¶ 11) is unavailing because the information provided by Ditech in the December 16 Response Letter was, in fact, accurate. (*See* Amended Complaint at ¶ 14, Ex. 4). Thus, Plaintiff has failed to state a violation of the FDCPA and her claim should be dismissed with prejudice accordingly.

### B. Plaintiff's Claim for Violation of RESPA Fails as a Matter of Law and Must be Dismissed.

In support of her claim under the Real Estate Settlement Procedures Act ("RESPA"), Plaintiff alleges that Ditech "violated this ACT by not provided [sic] the requested information in a timely fashion and after the required time frame sent false [sic] and misleading information that did not include the true name of the secured holder their address [sic] and contact information." (Amended Complaint, ¶ 14). However, Plaintiff has not and cannot state a claim under RESPA based on these factual allegations.

To state a RESPA claim, "plaintiffs must make specific factual allegations showing that a written request was made, and that such request included the detail necessary to qualify under the statute." *Odum v. Specialized Loan Servicing*, No. 1:15-CV-01949-MHC-JFK, 2016 U.S. Dist. LEXIS 121044, at *12 (N.D. Ga. July 5, 2016). Here, Plaintiff's allegations are generalized and fall short of "specific factual allegations showing that a written request was made, and that such request included the detail necessary to qualify under the statute." *Id.* (*See also* Amended Complaint, ¶¶ 13−15). As an initial matter, Plaintiff does not allege that the correspondence that she sent to Ditech met the definition of a "qualified written request" pursuant to the requirements of RESPA, nor does she specify which correspondence she is referring to. (*See, e.g.*, Amended Complaint, ¶ 13 (alleging

that "Defendant(s) were asked on numerous occasions to provide the name, address and contact telephone number of the secured creditor")). Elsewhere in the Amended Complaint, Plaintiff references the Notice of Validation of Alleged Debt sent on or about October 15, 2016 (*see* Amended Complaint, ¶ 11), and references numerous documents attached to the Amended Compliant, the majority of which are unrelated to Ditech or Albertelli. However, Plaintiff does not allege that any of this correspondence "included the detail necessary to qualify under" RESPA. *Odum*, 2016 U.S. Dist. LEXIS 121044, at *12.

However, even generously construing these general allegations as a claim under RESPA, Plaintiff's RESPA claim still fails as a matter of law because Ditech timely responded based on Plaintiff's own allegations. "RESPA requires a loan servicer to provide a written response acknowledging receipt of a borrower's Qualified Written Request ('QWR') within 20 days, and to take any necessary action within 60 days, excluding legal public holidays, Saturdays and Sundays." *Sanders v. U.S. Bank*, No. 1:13-cv-3192-WSD, 2013 U.S. Dist. LEXIS 164179, *11 (N.D. Ga. November 19, 2013). In the Amended Complaint, Plaintiff alleges that Defendants "received the information on about October 15." (Amended Complaint, ¶ 11). In a letter dated October 16, 2016 (*just one day later*), Ditech notified Plaintiff that it was "looking into the matter and will get back to you as soon as we have all

the information." (*See* Ex. L hereto). In a letter dated November 10, 2016, Ditech notified Plaintiff that "Ditech is in the process of reviewing your written request," that "[o]ur research has not concluded," and that "[t]he purpose of this letter is to notify you of our ongoing investigation in an effort to provide you with a resolution." (*See* Ex. M hereto). Finally, in Ditech's Response Letter dated December 15, 2016, Ditech responded to Plaintiff's letter and answered her inquiry. (Ex. N hereto). In the Response Letter, Ditech informed Plaintiff that the Loan was owned by the "Department of Veteran's Affairs" and enclosed Plaintiff's payment history for the Loan, the promissory note, Security Deed and the notice of service transfer to Ditech. *Id.* Ditech's numerous letters to Plaintiff demonstrate that Ditech's response complied within the 60 day (excluding holidays and weekends) statutory period. As such, even these liberally construed claims fail as a matter of law and should be dismissed accordingly.

Finally, Plaintiff's RESPA claim fails for the additional reason that "plaintiff [has] failed to 'articulate any facts showing how Defendant's failure to respond or its allegedly inadequate response to the RESPA request resulted in any damages or the amount of such damages.'" *Ashford v. Bank of Am., Nat'l Ass'n*, No. 1:16-CV-1445-WSD-JSA, 2016 U.S. Dist. LEXIS 138046, at *14 (N.D. Ga. Aug. 31, 2016) (quoting *Yates v. GMAC Mortg. LLC*, No. 1:10-cv-2546-RWS, 2010 U.S. Dist.

LEXIS 133785, at, *11−12, 2010 WL 5316550 (N.D. Ga. Dec. 17, 2010)); *see* ECF No. 8, *passim*. "Dismissal is appropriate on this ground alone." *Ashford*, 2016 U.S. Dist. LEXIS 138046, at *14. For each of these reasons, Plaintiff's RESPA claim fails as a matter of law and must be dismissed with prejudice.

**C. Plaintiff's Claim for Violation of the GRMA Fails as a Matter of Law and Must be Dismissed.**

Plaintiff claims that Ditech allegedly violated the Georgia Residential Mortgage Act ("GRMA") because "their records are not properly being maintained." (Amended Complaint, ¶ 16). However, Plaintiff's GRMA claim fails as a matter of law because she lacks a private right of action under the GRMA. "The GRMA prohibits any person transacting a mortgage business in the state of Georgia (including any person required to be licensed or registered as a mortgage lender or broker as defined in O.C.G.A. § 7-1-1001) from engaging in various enumerated unfair practices." *Jackson v. Premium Capital Funding, LLC*, No. 1:09-CV-01392-CAM-GGB, 2009 U.S. Dist. LEXIS 134047, at *17 (N.D. Ga. Nov. 23, 2009). "[T]he GRMA does not expressly provide a private cause of action." *Id.* at *18. Instead, "[t]he statute authorizes the Georgia Department of Banking and Finance to issue 'cease and desist' orders for violations of the GRMA, and to revoke a broker or lender's license for failure to comply with the statute." *Id.* at *17. "Violation of [the] cease and desist orders can also be penalized by civil fines and criminal

penalties." *Id.*

"Under both federal and state law, where a statute, such as the GRMA, provides for a comprehensive administrative scheme, there is strong evidence that the legislature intended those remedies to remain exclusive." *Id.* at *18. Therefore, there is no implied private cause of action under the GRMA. *See id.* at *19 ("Plaintiffs have also failed to cite to any Georgia case involving a regulatory licensing statute with administrative, civil and criminal penalties in which the Georgia courts implied a private cause of action or authorized one pursuant to O.C.G.A. §§ 51-1-6 and 51-1-8, nor has this court found any such cases."). Since the GRMA does not provide Plaintiff with a private right of action, her claim, as a matter of law, should be dismissed accordingly.

However, even if Plaintiff had a private cause of action under the GRMA, the GRMA would be inapplicable to her allegations. The GRMA governs the licensing of mortgage lenders and mortgage brokers, dealing primarily with the origination of loans. *See* O.C.G.A. § 7-1-1013. Indeed, "'[t]he strongest and broadest provisions of the statute prohibit *making* any residential mortgage with the intent to foreclose, which can be evidenced by the lack of substantial benefit to the borrower, the lack of probability of full payment by the borrower, or a pattern of similar loan foreclosures.'" *Jackson*, 2009 U.S. Dist. LEXIS 134047, at *17 (quoting Frank S.

Alexander, *Georgia Real Estate Finance and Foreclosure Law*, § 2:8 (2009–2010 ed.)) (emphasis added).

Here, Plaintiff's allegations appear to be about her account history and the initiation of foreclosure proceedings. (*See* Amended Complaint, ¶ 16). The GRMA does not govern this activity and thus, Plaintiff's claim necessarily fails. And even if the GRMA applied, Ditech's initiation of foreclosure would be proper because Plaintiff admits that she has "not made a payment on this account since . . . 2010," *id.*, and Plaintiff's Security Deed provides that upon notice and Plaintiff's failure to remedy default, the lender "may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law." (*See* Security Deed, Ex. A, ¶ 21). Thus, Plaintiff's claim under the GRMA fails as a matter of law and should be dismissed with prejudice accordingly.

**D. Plaintiff's Claim for Violation of the FCRA Fails as a Matter of Law and Must be Dismissed.**

Plaintiff appears to claim Defendants violated Section 623(a)(5) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a), because they "reported dates of delinquency to credit reporting agencies" and implies that this was "wrongful information." (Amended Complaint, ¶ 35). There are many faults with Plaintiff's allegations, but, most importantly, she does not have a private right of action under this section of the FCRA.

"Section 1681s-2(a) affirmatively places a duty on furnishers of information to provide accurate information and expressly prohibits furnishers from reporting information with actual knowledge of errors." *Bruce v. Homeward Residential, Inc.*, No. 1:14-cv-03325-MHC-AJB, 2015 U.S. Dist. LEXIS 138766, at *12–13 (N.D. Ga. Aug. 5, 2015) (citing 15 U.S.C. § 1681s-2(a)(1)(A)). Yet, "courts agree that Congress 'expressly reserved enforcement of subsection (a) to governmental agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to violation of § 1681s-2(b).'" *Id.* at *13 (quoting *Chipka v. Bank of America*, 355 F. App'x 380, 383 (11th Cir. 2009)). Indeed, "the FCRA does not provide a private right of action for violations of § 1681s-2(a)." *Smith v. Nat'l Credit Sys., Inc.*, No. 1:13-CV-4219-WSD-WEJ, 2014 U.S. Dist. LEXIS 67699, at *13 (N.D. Ga. Mar. 7, 2014) (citing *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008)). Since Plaintiff only alleges violation of § 1681s-2(a), *see* Amended Complaint, ¶¶ 35–39, and there is no "private right of action for violations of § 1681s-2(a)," *Smith*, 2014 U.S. Dist. LEXIS 67699, at *13, Plaintiff's FCRA claim fails as a matter of law and should be dismissed accordingly.[18]

---

[18] Furthermore, Plaintiff does not allege any actual wrongdoing in connection with her claim for violation of the FCRA, because the act of merely reporting delinquencies of the Loan to credit reporting agencies is certainly not actionable

## IV. Plaintiff Is Not Entitled to Equitable Relief.

Plaintiff's Amended Complaint seeks "a Permanent Injunction relief on Defendant(s)." (Amended Complaint, *Prayer for Relief* ¶ 1). However, Plaintiff comes to the Court with unclean hands. It is long-settled Georgia law that "[h]e who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." O.C.G.A § 23-1-10. Particular to foreclosure, a debtor "must pay or tender to the creditor the amount of principal and interest due" in order to set aside the sale and prevent interference with possession of the property. *Hill v. Filsoof*, 274 Ga. App. 474, 475–76, 618 S.E.2d 12, 14 (2005); *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 532–33, 744 S.E.2d 369, 373 (2013); *see also Harpe v. Stone*, 212 Ga. 341, 341, 92 S.E.2d 522, 523 (1956) (affirming dismissal of a suit challenging a foreclosure deed where plaintiff did not pay or tender amounts due).

Here, there is no allegation that Plaintiff tendered the amount due on the Loan. (*See generally*, Amended Complaint). There is not even a mention that she tried. (*Id.*) Instead, Plaintiff admits that she has "not made a payment on this account since . . . 2010." (*Id.* ¶ 16). While Plaintiff alleges her Loan has been satisfied, the only Cancellation on record is that of the secondary, junior security deed executed in

under the FCRA.

favor of the Fulton County Government. (Exs. G & H hereto). The Security Deed and Loan serviced by Ditech has not been satisfied. (*See* Exs. B, C, & D hereto).

Without an attempt to do equity, Plaintiff cannot then seek equity. Thus, this Court should dismiss any claim for equitable relief, including but not limited any form of injunctive relief.

## CONCLUSION

For the foregoing reasons, Ditech respectfully requests that this action and all claims herein be dismissed with prejudice, and for such other relief as is just and proper.

This 21st day of November 2017.

*/s/ Marlee Waxelbaum*_____
Marlee Waxelbaum
Georgia Bar No. 155779
Monika V. Scott
Georgia Bar No. 558009

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Telephone: 404-885-3000
Facsimile: 404-885-3900
E-mail: marlee.waxelbaum@troutman.com
E-mail: monika.scott@troutman.com
*Counsel for Defendant Ditech Financial LLC*

**CERTIFICATE OF SERVICE**

I certify that I have on this day filed and served the within and foregoing ***Ditech Financial LLC's Memorandum in Support if its Motion to Dismiss*** by using the Court's ECF system and via first-class mail, postage prepaid, addressed as follows:

Bridget Gooden-Hamilton
6170 Lamp Post Place
College Park, GA 30349

Albertelli Law, LLC
100 Galleria Parkway, Suite 960
Atlanta, GA 30339

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

This 21st day of November 2017.

*/s/ Marlee Waxelbaum*
Marlee Waxelbaum
Georgia Bar No. 155779