IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRIDGET GOODEN-HAMILTON, | : | CIVIL ACTION NO. |
| | : | 1:17-CV-1550-TCB-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALBERTELLI LAW, LLC, DITECH | : | |
| FINANCIAL, LLC, and All Others, | : | **ORDER AND NON-FINAL REPORT** |
| | : | **AND RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Bridget Gooden-Hamilton, proceeding *pro se*, filed the above-captioned action on May 1, 2017. Plaintiff has sued her mortgage servicer, Defendant Ditech Financial, LLC ("Ditech"), and its foreclosure law firm, Defendant Albertelli Law, LLC ("Albertelli Law"), for alleged violations relating to a foreclosure or attempted foreclosure of Plaintiff's residence.

The action is before the Court on the Defendant Ditech's Motion to Dismiss [23], filed November 21, 2017. Although the deadline for Plaintiff to file a response to Ditech's Motion to Dismiss was on or about December 8, 2017, Plaintiff failed to file any response, indicating that she does not oppose the motion. *See* LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). For the reasons discussed below, the undersigned **RECOMMENDS** that Ditech's Motion to Dismiss [23] be **GRANTED**, and that all

of Plaintiff's claims against Ditech be **DISMISSED** for failure to state a claim. Plaintiff is also **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date of this Report and Recommendation, why her claims against Defendant Albertelli Law should not be dismissed for failure of service.

## I. BACKGROUND

In the Plaintiff's original Complaint, she appeared to allege violations of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45, 53, and 56, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. In an Order [7] dated May 11, 2017, District Judge Timothy C. Batten, Sr., found that Plaintiff had failed to allege sufficient facts in the Complaint to demonstrate that she has standing to bring claims against the Defendants under the FTC Act or the FCRA. In particular, Judge Batten stated that Plaintiff failed to allege facts showing that any Defendant reported inaccurate information about any of her accounts, or that she suffered an injury as a result. Order [7] at 2-3. Judge Batten ordered Plaintiff to file an amended complaint that corrected the noted deficiencies. *Id.* at 5.

Subsequently, on May 31, 2017, Plaintiff filed an "Amended Complaint for Injunctive Civil Penalties and Other Relief" [8] ("Am. Compl.") that substantially expanded her factual allegations and claims presented in the original complaint. Upon service of the Amended Complaint, Defendant Ditech filed a Motion to Dismiss [23] on November 21, 2017. The following facts are taken from the

Plaintiff's Amended Complaint [8] and are assumed to be true for the purposes of considering Ditech's Motion to Dismiss, except when noted.

On or about January 3, 1996, Plaintiff and her now-deceased husband purchased the property at issue in this case in College Park, Georgia. Am. Compl. [8] ¶ 8. On or about September 29, 2016, Plaintiff received a letter from Defendant Albertelli Law, stating that Albertelli Law had been retained to initiate foreclosure proceedings, giving notice of a foreclosure sale of November 1, 2016, and providing other disclosures. *Id.* at 13.

Plaintiff alleges that she submitted what she characterizes as a Qualified Written Request ("QWR"), demanding servicing-related information, on or about October 8, 2016. *See id*. ¶ 2. The October 8 letter is not attached or described in any detail. However, the Amended Complaint also attaches a copy of a prior alleged QWR, sent on February 28, 2015. *See id*. at 48. This document, which was sent to Albertelli Law in apparent response to an earlier foreclosure notice, demanded "validation" of the debt, including a "copy of the original alleged note accompanied by an AFFIDAVIT from the alleged lender," "details how the alleged debt was calculated," "evidence that the Statute of Limitations has not expired," and a variety of other records and information. *Id.* at 48-49.

Defendant Ditech responded to Plaintiff's letter (which Ditech stated was received on October 13, 2016) on October 16, 2016, indicating that Ditech is

"looking into the matter" and will provide a further written response. *Id*. at 16. Ditech then responded further on December 15, 2016. Ditech identified itself as the servicer on Plaintiff's mortgage, and identified the owner or investor of the mortgage as the Department of Veterans Affairs. *Id*. at 14. The letter indicated that relevant legal documents including the security deed, note, *etc.*, were available from the local county records office, and the letter stated that it was enclosing payment history for the account. *Id*. Ditech's letter provided instructions as to how Plaintiff should send proof of payments not otherwise included in the payment history. *Id*.

Plaintiff nevertheless appears to dispute whether the Department of Veterans Affairs was truly the secured party with regard to her mortgage. Plaintiff alleges that she had refinanced her mortgage in 2005 and that the mortgage was "purged" out of the Veterans Administration system as of September 15, 2015. *Id.* ¶ 8. Elsewhere in the Amended Complaint, Plaintiff alleges that the "account" was "satisfied" in 2010, and that she has not made any payments since that time. *Id*. ¶ 16. The Amended Complaint attaches statements from an individual named Angelina Payne, dated in December of 2016, who claims that she spoke to employees at the Department of Veterans Affairs, who stated that Plaintiff's mortgage had been refinanced and that the VA was no longer an investor on that loan. *Id*. at 20-21.

In connection with its Motion to Dismiss, Ditech attached copies of a variety of public records relating to the property at issue: (1) the original security deed

issued in connection with Plaintiff's mortgage, in favor of the Bank of Texas FSB ("BoT") [23-2]; (2) the assignment of the security deed to Chemical Residential Mortgage, dated January 25, 1996 (the "First Assignment") [23-3]; (3) the subsequent assignment to the Secretary of Veterans Affairs ("VA"), dated April 14, 2004 (the "Second Assignment") [23-4]; (4) a security deed dated January 25, 2005, with regard to a second and subordinate mortgage loan, in favor of the Fulton County Government [23-7]; (5) a cancellation notice recorded in the Fulton County public records, dated July 12, 2010, indicating that the Fulton County loan was "satisfied in full" and that the security deed associated with this second mortgage was cancelled [23-8]; (6) a quitclaim deed, dated November 1, 2013, by which Plaintiff purported to convey title to the property to Payne's Diversified Housing [23-9].

In addition, Ditech attached the following other documents: (1) a loan modification agreement, dated July 1, 2004, between Plaintiff and the VA (the "Modification Agreement") [23-5]; (2) a welcome letter from Ditech, stating that Ditech became the servicer of the loan on June 1, 2016 [23-6]; (3) a "Notice of Default and Intent to Accelerate," dated October 14, 2013 [23-10]; (4) a letter from Plaintiff to Defendant Ditech requesting "validation of the alleged debt," dated September 19, 2016, but which bears a facsimile transmission date of October 13, 2013 [23-12]; and (5) an update letter from Ditech, dated November 10, 2016,

indicating that "our research has not concluded," and that the account review was still ongoing [23-14]. Ditech also attached what appears to be copies of some of the same documents supplied by Plaintiff, that is, the September 29, 2016 letter from Albertelli Law, the October 16, 2016 initial response from Ditech to Plaintiff's written request, and the December 15, 2016 ultimate response from Ditech.

## II. DISCUSSION

### A. *Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff, however, may not merely plead facts in a complaint sufficient to find a claim to relief is conceivable; instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Defendant Ditech has moved to dismiss the Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice"). A court may not, however, rewrite inadequate pleadings—including those filed by *pro se* plaintiffs—to plead essential allegations. *See Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995). Moreover, although a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences."*Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a Court generally cannot consider matters outside of the Complaint and its attachments when evaluating a motion to dismiss under Rule 12(b)(6). Ditech, however, has attached various other documents, including a variety of publicly-filed legal regarding Plaintiff's property and other correspondence referred to or relating directly to the servicing relationship alleged by Plaintiff. Plaintiff has not disputed the authenticity of any of these documents and does not oppose Ditech's request that the Court should consider these documents for purposes of resolving its Motion to Dismiss.

Several of Ditech's attachments indicate on their face that they are publicly-filed legal records. It is well established that the Court may take judicial notice of such public records, the authenticity of which are undisputed, without converting the Motion to Dismiss into a motion for summary judgment. *See Universal Express Inc., v. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. April 18, 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider.") (citations omitted); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). Accordingly, the Court takes judicial notice of the public records filed by Defendant Ditech in connection with its Motion to Dismiss.

Furthermore, the Eleventh Circuit has held that documents that are "central" to a plaintiff's claim and undisputed may be considered by the Court as part of the pleadings. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal"); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by

reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276.

Because Plaintiff has referred to the security deeds, assignment history, and various original loan documents in the Amended Complaint, and those documents are central to her claims, the Court will consider those documents to the extent they are attached by Ditech in resolving the motion. *See Brooks*, 116 F.3d at 1369; *see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Plaintiff's Amended Complaint also refers to, but does not attach, a loan modification or refinancing agreement with the VA in or about May of 2005, an alleged QWR that she sent on October 8, 2016, and a document (perhaps the same one) that was received by Ditech on October 13, 2016. Plaintiff does not dispute the authenticity of the July 2004 loan modification agreement between herself and the VA, attached by Ditech [23-5], and the correspondence sent by Plaintiff to Ditech bearing the facsimile date of October 13, 2016 [23-12]. Thus, as these documents appear to be referenced in Plaintiff's Amended Complaint, and are central to

Plaintiff's claims, the Court will consider them in adjudicating Ditech's Motion to Dismiss.[1]

As noted above, Plaintiff has not responded to Ditech's Motion to Dismiss. The Local Rules of this Court specifically provide that a "[f]ailure to file a response shall indicate that there is no opposition to the motion." L.R. 7.1B, NDGa. Plaintiff's lack of any opposition is one basis for the Court's recommendation that the Motion to Dismiss be granted, although the Court will also proceed to discuss the merits of the Motion.

B. *Plaintiff's Claims against Ditech*

Plaintiff's claims appear to be based on her belief that the mortgage that Ditech purports to be servicing, and for which Albertelli Law purports to be pursuing a foreclosure, has been refinanced. Thus, because Plaintiff believes that the original creditor (the VA) has been made whole through a re-financing, she asserts that Ditech and/or Albertelli Law have violated various obligations to her by nevertheless continuing to pursue a security interest in the property. The Court will discuss the individual claims that Plaintiff appears to assert against Defendant Ditech.

---

[1] The Court disregards Ditech's other attachments not discussed above. In any event, the Court does not find any of these attachments to be material, as resolution of the Motion to Dismiss does not turn on the consideration of any of these particular documents.

1. The Fair Debt Collections Practices Act

Plaintiff has asserted a claim against Ditech under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e; *see also Frazier v. Absolute Collection Serv., Inc.*, 767 F.Supp.2d 1354, 1363 (N.D.Ga. 2011) ("The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers."). Specifically, the FDCPA "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 Fed. Appx. 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

"To prevail on a FDCPA claim, a plaintiff must establish that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement

imposed by the FDCPA." *Frazier*, 767 F.Supp.2d at 1363 (internal quotation marks and citations omitted). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is

critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.*, No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

Defendant argues, without any opposition from Plaintiff, that the Amended Complaint fails to state a claim under the FDCPA for a variety of reasons. First, the FDCPA claim (Am. Compl. ¶ 11) does not even clearly state what actions were taken by each Defendant in violation of the statute. The Amended Complaint, rather, appears to lump both entities together with vague catch-all references to "defendant(s)," such as "[a]s part of its debt collection activities, defendant(s) furnished information to consumer reporting agencies." *Id.* ¶ 11. Such allegations do not properly state a claim under *Iqbal* and *Twombly*, as they fail to give each Defendant notice as to the basis of its particular liability.

Second, Ditech argues, and the Court agrees, that the Amended Complaint fails to allege any facts to suggest that Ditech qualifies as a "debt collector" under the FDCPA. Plaintiff simply provides the threadbare definition of a "debt collector," without any accompanying facts to support the conclusion that Defendant Ditech (or Albertelli Law for that matter) qualifies as a debt collector. *See id.* Indeed, as discussed above, mortgage servicers such as Ditech are generally considered to be creditors, not debt collectors for purpose of the FDCPA. *See* 15 U.S.C.

§ 1692a(6)(F); *Stroman*, 852 F. Supp. 2d at 1375; *see also Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1308 (S.D.Fla. 2009) (dismissing an FDCPA claim with prejudice when the complaint indicated that the defendants were creditors and mortgage servicers and, thus, were specifically excluded under the FDCPA). Plaintiff's failure to allege otherwise renders her FDCPA claim against Ditech subject to dismissal.

The Amended Complaint also fails to allege that Defendant Ditech committed any conduct that would violate the FDCPA, even if Ditech were considered to be a debt collector. Plaintiff alleges that Defendants "have not provided true and accurate accounting of the requested information regarding the alleged account." Am. Compl. ¶ 8. But there is no general obligation under the FDCPA for a creditor or debt collector to provide a "true and accurate accounting" of the debt.

What the FDCPA requires is that, if a debtor states in writing that a debt is disputed within thirty days of receiving an initial collection notice, the debt collector must take certain steps to obtain a verification of the debt:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities

> and communications that do not otherwise violate this subchapter may continue during the 30–day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692(g)(b).

In this case, Plaintiff does not allege specifically in the Amended Complaint that she "disputed" the debt. Rather, Plaintiff alleges only that she submitted a Qualified Written Request for information. *See* Am. Compl. ¶ 2. Although Plaintiff does not attach this letter, Ditech attaches a letter from Plaintiff dated September 19, 2016, which was faxed to Ditech on October 13, 2016, which appears to be the request for information referred to by Plaintiff. *See* Def. Ex. K [23-12]. This letter did not state that the debt was disputed. Rather, the letter stated that "I am exercising my rights under the [FDCPA], which stipulates that a debt collector must, if requested, provide validation of the alleged debt." *Id.* Thus, the letter requested a variety of specific items of information, including a "copy of the alleged note accompanied by an AFFIDAVIT from the alleged lender." *Id.* The letter also does not specifically request the name and address of the original creditor, although it requests proof of the debt in the form of a document signed with a "wet signature" by the original creditor. *Id.*

Even if this September 19, 2016 letter could be characterized as a written "dispute," the facts as alleged by Plaintiff show no violation by Ditech. Rather, the facts show that Ditech researched the request, updated Plaintiff, and ultimately informed Plaintiff of the results of its investigation into the validity of the debt on December 15, 2016. *See* Am. Compl. at 14. Ditech identified the name and address of the secured creditor, enclosed a payment history showing the default, and referred Plaintiff to publicly-available legal documents regarding the debt, including copies of the note and security deed. *Id*. The Amended Complaint does not allege that Ditech engaged in any arguable debt collection activity in between receiving Plaintiff's request for information on October 13, and providing its response and verifications on December 15. This course of conduct appears on its face to comply with any obligations presented by § 1692(g)(b), and it appears that Ditech supplied the information required.

Notably, the debt verification provision of the FDCPA does not require a debt collector to prove the validity of a debt to a debtor's satisfaction, or to comply with a debtor's laundry list of demands for specific documents such as "an AFFIDAVIT from the alleged lender," "copies of any papers that show that I agreed to pay the alleged debt," a "wet signature," "evidence that the Statute of Limitations has not expired," or evidence that "you are licensed." *See* Def. Ex. K [23-12]. Nor does the statute require debt collectors to answer interrogatories such as "identify what the

alleged debt pertains to along with a chain of title," or "provide details how the alleged debt was calculated." *Id.* Rather, the FDCPA simply requires the debt collector to identify the underlying creditor on whose behalf the debt is being collected, and to provide copies of documents verifying the debt. It appears that Ditech did that in this case by identifying the name and address of the creditor, enclosing payment records, and referring Plaintiff to other publicly-available documents such as the note and security deed. That Plaintiff did not agree with the underlying facts disclosed by Ditech does not itself state a claim under the FDCPA.

Moreover, the Amended Complaint does not allege facts to suggest that the information provided by Defendant was faulty. While Plaintiff stated in the Amended Complaint that she understood her mortgage with the VA to have been refinanced and thereby satisfied, the actual documents themselves placed into the record tell a different story. The 2004 VA loan modification is in the record, and does not state that the debt was satisfied. To the contrary, the document states that the Secretary of Veterans Affairs "is now the present holder of said Security Deed and Note." *See* Def. Ex. D [23-5] at 2. Plaintiff includes the first page of the 2005 Security Deed with the Fulton County Government, which Plaintiff appears to suggest may constitute a refinancing and satisfaction of the VA loan. *See* Am. Compl., Ex. 1. The full copy of that 2005 Security Deed was introduced into the record by Ditech, however, and this document makes clear that the new security

interest being recorded by the Fulton County Government was "subject" and subordinate to "the first lien for loan granted by one hereinafter termed Lender." *See* Def. Ex. F [23-7] at 3. In other words, the document itself refutes the suggestion that the 2005 Fulton County loan "satisfied" and cancelled the previously-existing loan. Therefore, that the Fulton County loan was satisfied in or about 2010, which is what the documents suggest, does not indicate that the original VA loan was also thereby satisfied. Thus, the documentation obtained and disclosed by Ditech in connection with its alleged debt collection efforts, and which has been furnished into the record of this case, corroborate that the VA was the proper creditor pursuant to the FDCPA.

For these same reasons, the Amended Complaint fails to allege sufficient facts to show that Ditech threatened to engage in foreclosure when "there is no present right to the property through an enforceable security interest." Am. Compl. ¶ 10 (citing 15 U.S.C. § 1692f(6)). The legal documents placed into the record show that the VA had an enforceable security interest in the property, and refute the suggestion that the VA's interest was extinguished by the 2004 modification or the 2005 refinancing.

That VA personnel gave someone named Angelina Payne contrary or confusing information about Plaintiff's loan in telephone inquiries in 2016 does not establish a FDCPA violation against Defendant Ditech. Again, even assuming that Ditech were a debt collector under the FDCPA, its obligation as debt collector would

be to obtain and provide or refer Plaintiff to documentary verification of the debt, which obligation Ditech appears to have satisfied. And the legal records and other documents in the record suggest that the VA was in fact the secured creditor and assignee of the Security Deed, and that the VA's interest was not extinguished in the transactions referred to by Plaintiff.

Accordingly, the undersigned **RECOMMENDS** that Ditech's Motion to Dismiss [23] be **GRANTED** as to the Plaintiff's FDCPA claim against Ditech, and that such claim be **DISMISSED** for failure to state a claim.

2. Real Estate Settlement Procedures Act

Plaintiff has also asserted a claim against Ditech under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq*. Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs. *See McCarley v. KPMG Intern.*, 293 Fed. App'x 719, 722 (11th Cir. 2008). RESPA provides that those making and/or servicing a mortgage loan must make certain disclosures relating to the servicing of the loan. 12 U.S.C. §§ 2605(a), (b). The lender must disclose, at the time of application, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding. 12 U.S.C. § 2605(a). Further, the loan servicer must generally notify the borrower of any assignment, sale

or transfer of the servicing of the loan within 15 days before the effective date. *Id.* at § 2605(b). RESPA does not require notice when the underlying note or mortgage is transferred.

In addition to these automatic disclosures, RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") from a borrower that meets certain requirements and that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *see also* 24 C.F.R. § 3500.21(e). Moreover, RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a QWR for information about a loan, 12 U.S.C. § 2605(f).

Plaintiff alleges in the Amended Complaint that Ditech violated its obligation to respond to her QWR: "Ditech Financial LLC. violated this ACT by not provided [sic] the requested information in a timely fashion and after the required time frame sent false and misleading information that did not include the true name of the secured holder their address and contact information." Am. Compl. ¶ 14.

In order to state a violation of the QWR requirement of RESPA, a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff

sent the defendant a valid QWR, (3) the defendant failed to acknowledge receipt of the QWR within 20 days or substantively respond within 60 days, and (4) the plaintiff is entitled to actual or statutory damages. *See* 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp*., 382 Fed. App'x 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605). A loan servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. 12 U.S.C. § 2605(f).

At the outset, this claim fails because Plaintiff does not allege any facts sufficient to establish that the request met the requirements of a valid QWR. RESPA does not "require a servicer to respond to any question that a borrower may ask–no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc*., 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). For example, it is well established that debtors are not entitled to copies of original loan documents–including "wet signature" copies of notes or loan agreements–via a QWR. *See Liggion v. Branch Banking and Trust*, Civil Action No. 1:11-CV-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) (Duffey, J.) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS,

2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (internal citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.").

As one court explained, it is not sufficient for a plaintiff to allege that a letter sent to a servicer merely requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR:

> The counterclaim alleges that on April 14, 1998, the Naeems, through counsel, sent a qualified written request to MorEquity for information relating to their loan, and that MorEquity failed to respond within 60 days as required by § 2605(e). None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing. There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance. Therefore, the request did not relate to "servicing" of the loan, and Count V fails to state a claim under § 2605.

*MorEquity v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000).

Servicers are required only to respond to inquiries relating to servicing of the loan. Congress specifically defined "servicing" as "receiving any scheduled periodic

payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA simply does not require servicers to answer inquiries on other topics. Because Plaintiff includes no allegations to establish the substance of her requests, and specifically to establish that her requests qualify as a valid QWR, the allegations fail on that basis alone.

Although Plaintiff did not attach or describe her QWR, Ditech attached a letter from Plaintiff dated September 19, 2016, which bears a facsimile transmission date of October 13, 2016. *See* Def. Ex. K [23-12]. It appears, although Plaintiff has never actually stated this, that this document may be the one to which Plaintiff refers as her October 2016 QWR. The Amended Complaint refers to a QWR dated October 8, 2016, which would not appear to describe this or any other letter in the record. *See* Am. Compl. [8] ¶ 2 ("[D]efendants violated my rights by not responding to the Qualified Written request that was sent to them on or around Oct 8, 2016 in a timely fashion.").

In any event, the majority of the information demanded in the letter attached as Defendant's Exhibit K falls outside of the scope of a valid QWR, as it demands original loan documents or other similar matters, such as a "copy of the original alleged note accompanied by an AFFIDAVIT from the alleged lender," "copies of

any papers that show I agreed to pay the alleged debt," "your license numbers," and "the signed copies received after closing." *See* Def. Ex. K [23-12].

To the extent this letter seeks servicing-related information, the allegations in the record suggest that Ditech provided that information. On December 15, 2016, Ditech disclosed that it received assignment of the servicing rights on the account from Residential Credit Solutions, Inc., on June 1, 2016, provided the identity and contact information for the underlying creditor (the VA), enclosed a payment history on the account, and provided information as to how Plaintiff could obtain other publicly-available documents. *See* Am. Compl. [8] at 14, Def. Ex. N [23-15].

To the extent that Plaintiff complains that Ditech incorrectly identified the VA as the creditor, the facts in the record for purposes of this motion do not plausibly support such a conclusion for all of the reasons explained above. Moreover, Plaintiff alleges no facts to suggest that Ditech was servicing the loan for some other unidentified entity. Plaintiff's argument appears to be that she does not still owe money to the VA. Her disagreement with the validity or existence of an ongoing obligation to the VA does not state a RESPA claim against the servicer, Ditech, for simply identifying the VA as the entity for whom it is servicing the account.

Plaintiff's complaints about the timing of Ditech's responses are also meritless. "RESPA requires a loan servicer to provide a written response

acknowledging receipt of a borrower's Qualified Written Request ('QWR') within 20 days, and to take any necessary action within 60 days, excluding legal public holidays, Saturdays and Sundays." *Sanders v. U.S. Bank Nat. Ass'n*, No. 1:13-CV-3192, 2013 WL 6086157, *3 (N.D.Ga. Nov. 19, 2013). The facts show that Ditech acknowledged receipt of Plaintiff's alleged October 2016 QWR almost immediately, on October 16, 2016, and provided a full response on December 15, 2016. *See* Am. Compl. at 14, 16; Def. Ex. N [23-15]. Plaintiff provides no factual allegations to support the conclusion that the December 15, 2016 was transmitted more than 60 business days after Ditech received the alleged QWR.[2]

In any event, even if a technical violation of the QWR requirement could be discerned, Plaintiff establishes no entitlement to any relief. She alleges no facts to suggest the existence of actual damages, or a policy and practice of repeated violations such as to warrant an award of statutory damages. It is also well established that, just like the FDCPA, "RESPA provides for neither equitable nor injunctive relief, including relief from foreclosure." *Malally v. BAC Home Loan Servicing, LLC*, 2010 WL 5140626, at *9 n.13 (N.D. Ga. Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010). Dismissal of the Plaintiff's RESPA claim is warranted on this basis alone.

[2] To the contrary, the facts in the record suggest that Defendant Ditech received Plaintiff's request for information on October 13, 2016, which was obviously less than 60 *business* days before December 15, 2016.

Accordingly, the undersigned **RECOMMENDS** that Ditech's Motion to Dismiss [23] be **GRANTED** as to the Plaintiff's RESPA claim against Ditech, and that such claim be **DISMISSED** for failure to state a claim.

3. Other Claims

Plaintiff also makes a reference in the Amended Complaint to the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. §§ 7-1-1001, *et seq*. *See* Am. Compl. at ¶ 9. Courts in this district have found, however, that this statute does not give rise to a privately-enforceable right of action. *See Reese v. Wachovia Bank, N.A.*, No. 1:08–cv–3461–GET, 2009 U.S. Dist. LEXIS 94802, at *6–7 (N.D.Ga.2009); *Jordan v. PHH Mortg. Corp., No.* 1:10-CV-0967-TWT-CCH, 2010 WL 5058638, at *7–8 (N.D. Ga. Nov. 5, 2010) (Hagy, Mag. J.), adopted by 2010 WL 5055809, at *1 (N.D.) (Thrash, J.); *Kabir v. Statebridge Co., LLC*, No. 1:11-CV-2747-WSD, 2011 WL 4500050, at *9 n. 13 (N.D. Ga. Sept. 27, 2011) (Duffey, J.) ("Courts within this district have also found that a private cause of action does not arise under the GRMA, which does not explicitly create a private action and which contains a robust public enforcement scheme."); *Jones v. Vericrest Financial, Inc., No.* 1:11-CV-2330, 2011 WL 7025915, at *21 (N.D. Ga. Dec. 7, 2011).

Plaintiff also cites to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a). *See* Am. Compl. at ¶ 9. But the FCRA also does not provide a general

private right of action against mere furnishers of credit information. *See Peart v. Shippie*, 345 Fed. App'x 384, 386 (11th Cir. 2009) (although "the FCRA prohibits furnishers of credit information from providing false information," the "statute bars private suits for violations of this provision") (citing 15 U.S.C. §§ 1681s-2(a), 1681s-2(c), and 1681s(c)(1)(B)); *Green v. RBS Nat'l Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008) (the FCRA "does not provide a private right of action to redress" violations of this section); *Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *13 (N.D. Ga. June 5, 2013); *Ingram v. Green & Cooper, Attorneys L.L.P.*, No. 1:11–cv–03475–TWT–RGV, 2012 WL 1884598, at *4 (N.D. Ga. Apr. 20, 2012). Specifically, the Eleventh Circuit has held that only "federal agencies, federal officials, and state officials" may enforce the prohibition against the furnishing of false credit information. *Green*, 288 Fed. App'x at 642 (citing 15 U.S.C. §§ 1681s-2(c), (d); 15 U.S.C. § 1681(s)(c)(1)(B)).

Other sections of the FCRA provide a private right of action to consumers. One section of the FCRA that provides a private right of action to consumers requires furnishers to investigate and respond promptly to notice of a dispute regarding the completeness or accuracy of information provided to a credit reporting agency. 15 U.S.C. § 1681s–2(b). This provision of the FRCA can be enforced through a private right of action, but *only* if the furnisher received notice of the dispute through a credit reporting agency and failed to investigate the dispute. *See*

*Green*, 288 Fed. App'x at 642 ("The FCRA does provide a private right of action for a violation of § 1681s–2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."); *see also Caselli v. PHH Mortgage Corp.*, No. 1:11-CV-2418-RWS, 2012 WL 124027, at *7 (N.D. Ga. Jan. 13, 2012) (Story, J.) ("Plaintiff only asserts that *she* notified the Defendant of her credit dispute. Nowhere does Plaintiff allege that the Defendant received notice from a credit reporting agency of any dispute. Therefore, Plaintiff has failed to state a claim against this Defendant under the FCRA . . . .") (emphasis in original).

> To survive a motion to dismiss on a 15 U.S.C. § 1681s-2(b) claim, the plaintiff must allege that the defendant received the proper notice from the consumer reporting agency pursuant to 15 U.S.C. § 1681i(a)(2) and that the defendant failed to uphold its duties pursuant 15 U.S.C. § 1681s-2(b). *Pinckney v. SLM Fin. Corp.*, 433 F.Supp.2d 1316, 1319 (N.D. Ga.2005). . . . [A]fter receiving notice of a dispute from the consumer reporting agency about inaccurate information, a furnisher of information is required to: (1) conduct an investigation with respect to the disputed information; (2) review all of the relevant information provided in the notice from the consumer reporting agency; (3) report the results of its investigation to the consumer reporting agency; (4) if the investigation reveals incomplete or inaccurate information, report those findings to the other major consumer reporting agencies to which it provided the incomplete or inaccurate information; and (5) modify, delete, or permanently block the reporting of any information disputed by a consumer that it finds to be inaccurate or incomplete or that cannot be verified after reinvestigation. 15 U.S .C. § 1681s-2(b)(1).

*Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *6–7 (N.D. Ga. June 5, 2013) (Thrash, J.).

Even assuming that Defendant Ditech otherwise committed an actionable violation of the FCRA, Plaintiff has established no private right of action. Plaintiff does not allege that she notified any credit reporting agency of any false credit information, much less that Ditech failed to conduct a reasonable investigation after having received notice of a dispute from any credit reporting agency. The Amended Complaint therefore states no claim under the FCRA.

C. *Defendant Albertelli Law*

Rule 4(m) of the Federal Rules of Civiol Procedure provides that "if a defendant is not served within 90 days after the complaint is filed, the court–on motion of its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In this case, although Plaintiff was granted *in forma pauperis* status, Plaintiff remained responsible for furnishing the Marshals with sufficient information to allow them to effectuate proper service. *See* Order [11]. Plaintiff was instructed to provide service-related information regarding the Defendants on August 16, 2017. *See id*. Thus, service was required on or about November 16, 2017.

Although Plaintiff completed and returned USM 285 forms indicating purported service-related information for Defendants, the U.S. Marshals filed a Return of Service Unexecuted as to Albertelli Law LLC on November 14, 2017 *See*

Return of Service [22]. This document indicated that service was refused at the particular location listed because "Albertelli Law stated they do not accept at present location." *Id.* at 1. Nearly three months later, Plaintiff has not provided any other information to allow the Marshals to properly serve Albertelli Law, has not requested an extension of time to serve Albertelli, and has not requested any other relief on this topic.

Thus, it appears that Plaintiff's claims against Albertelli Law should be dismissed. Plaintiff is therefore **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date of this Order, why her claims against Defendant Albertelli Law should not be dismissed without prejudice for failure to serve. In doing so, Plaintiff should also explain why her claims against Albertelli Law should not independently be dismissed on the basis of frivolity under 28 U.S.C. § 1915(e)(2)–or why an extension to allow her time to serve Albertelli Law would not be futile–in light of the Court's recommended rulings set out with regard to Ditech above.

## III. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Ditech's Motion to Dismiss [23] be **GRANTED**, and that all of Plaintiff's claims against Ditech be **DISMISSED** for failure to state a claim.

Plaintiff is also **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date Order, why her claims against Defendant Albertelli Law should not be dismissed.

**IT IS SO ORDERED and RECOMMENDED** this 18th day of April, 2018.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE